## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | | |
|---|---|---|
| **CORRECT RX PHARMACY** | § | |
| **SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-CV-03006-N** |
| | § | |
| **CORNERSTONE AUTOMATION** | § | |
| **SYSTEMS, LLC,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' COMBINED MOTION
FOR JUDGMENT, MOTION FOR JUDGMENT NOTWITHSTANDING
THE VERDICT, AND REPLY TO DEFENDANTS' RESPONSE TO
<u>PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT (AND BRIEF IN SUPPORT)</u>**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD............................................................................................2

III.    ARGUMENT ........................................................................................................4

      A.      The Economic Loss Rule Does Not Preclude Correct Rx's Claim for
           Reliance Damages................................................................................................4

      B.      The Jury was Not Required to Find the Individual Defendants Liable in
           Order to Hold CASI Liable................................................................................16

           1.      CASI was sued for its own direct negligence ........................................17

           2.      There was evidence introduced at trial of misrepresentations other
                 than those of the individual Defendants................................................18

           3.      The jury may have concluded that the individual Defendants did
                 not have a personal pecuniary interest in the transaction and, thus,
                 could not be personally liable .................................................................19

           4.      The jury may have determined there was insufficient evidence to
                 hold the individual Defendants liable, but the totality of the
                 evidence was sufficient to hold CASI liable...........................................20

      C.      Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for  Entry
           of Judgment......................................................................................................21

      D.      Defendants' Request for an Award of Costs is Premature .................................21

IV.     CONCLUSION....................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

## <u>*CASES*</u>

*Alaniz v. San Isidro Indep. Sch. Dist.*, 589 F. Supp. 17 (S.D. Tex. 1983), <u>*aff'd,*</u> 742 F.2d 207 (5th Cir. 1984)..........................................................................................20

*Anthony v. Chevron USA, Inc.*, 284 F.3d 578 (5th Cir. 2002) .......................................3

*Blue Star Operating Co. v. Tetra Techs., Inc.*, 119 S.W.3d 916 (Tex. App. 2003)...................15

*CCE, Inc. v. PBS & J Const. Servs., Inc.*, 461 S.W.3d 542 (Tex. App. 2011) ...........................7

*Century Prod. Co. v. COSCO, Inc.,* No. 3:00-CV-0800-BC, 2001 WL 1577607 (N.D. Tex. Dec. 6, 2001)..........................................................................................7

*Coon v. Schoeneman,* 476 S.W.2d 439 (Tex.Civ.App.-Dallas 1972)..........................................9

*D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662 (Tex. 1998)..............................8,13

*Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326 (5th Cir. 2001)........................................................3

*Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991) ..........................4,8

*Foley v. Parlier*, 68 S.W.3d 870 (Tex. App. 2002) ...................................................................8

*Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41 (Tex. 1998)........................................................................................5,9

*Giddy Up, LLC v. Prism Graphics, Inc.*, 2008 WL 656504 (N.D.Tex. 2008)...........................17

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986) .................................................14

*Hiltgen v. Sumrall*, 47 F.3d 695 (5th Cir. 1995) .......................................................................3

*Hunter v. Knoll Rig & Equip. Mfg.*, 70 F.3d 803 (5th Cir. 1995)..............................................3

*Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747 (N.D.Tex. 2012)................... 4-6,8

*In re Thrush*, 433 B.R. 585 (N.D. Tex. 2010)............................................................................6

*Lafarge v. Wolff, Inc.,* 977 S.W.2d 181 (Tex. App. 2004).........................................................9

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007)..............................11

*LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W.3d 234 (2014) ............................ 4,11-12

*Mistletoe Express Serv. v. Locke,* 762 S.W.2d 637 (Tex.App.-Texarkana 1988).......................8

*Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.,* 2005 WL 1704793 (N.D.Tex. July 19, 2005) ................................................................................................................................5,8

*Poliner v. Tex. Health Sys.*, 537 F.3d 368 (5th Cir. 2008) .......................................................3,20

*Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882 (Tex. App. 2004) .............................9

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ....................................................................................................................3

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000).......................................... 3-4

*Seven-Up v. Coca-Cola*, 86 F.3d 1379 (5th Cir. 1996)..................................................................4

*Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126 (Tex. App. 2012)..................................................8

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011) .........................12

*Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir. 1974).........................................17

*Stanley v. Graff, Independnat Exceutor of the Estate of Alvin V. Graff, Deceased v. 2920 Park Grove Venture, LTD, et al.,* 2018 WL 2949158 (Tex. App. June 13, 2018) ..........4

*Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.,* 2006 WL 2432309 (N.D.Tex. Aug. 18, 2006) ....................................................................................................................5

*Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793 (Tex. App. 2007).....................8,12,14

*Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir.1983)....................................................................20

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991)............................................... 14-15

*Texas & P. Ry. Co. v. Huber*, 95 S.W. 568 (Tex.Civ.App. 1906) ...............................................17

*Thompson v. Bass*, 616 F.2d 1259 (5th Cir.1980), *cert. denied* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980) ..................................................................................20

*Trustees of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski,* 27 F.3d 153 (5th Cir.1994) ....................................................................................6

*Win Shields Prods., Inc. v. Greer*, No. 05-16-00274-CV, 2017 WL 2774443 (Tex. App. June 27, 2017), *review denied* (Oct. 27, 2017) ................................................................9

**<u>RULES</u>**

Fed. R. Civ. P. 50 ............................................................................................................3

Fed. R. Civ. P. 54 ..........................................................................................................21

Local Rule 54.1 ..............................................................................................................21

**<u>TREATISES</u>**

Restatement (Second) of Torts § 552B (1977) .........................................7-8,12-13,16

Restatement (Second) of Contracts § 347 (1981) ........................................................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division**

| | | |
|---|---|---|
| **CORRECT RX PHARMACY** | § | |
| **SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-CV-03006-N** |
| | § | |
| **CORNERSTONE AUTOMATION** | § | |
| **SYSTEMS, LLC,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' COMBINED MOTION
FOR JUDGMENT, MOTION FOR JUDGMENT NOTWITHSTANDING
THE VERDICT, AND REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT (AND BRIEF IN SUPPORT)**

Plaintiff Correct Rx Pharmacy Services, Inc. ("Correct Rx") submits this Combined Opposition to Defendants' Motion for Judgment Notwithstanding the Verdict ("MotionJNOV") and Reply in Further Support of Plaintiff's Motion for Entry of Judgment, and states:

## I.    INTRODUCTION

After five days of trial and two and a half days of deliberations, on May 10, 2018, the jury returned a verdict in the form of answers to special interrogatories finding that Cornerstone Automation Systems, LLC ("CASI") was liable to Plaintiff Correct Rx on its claim for Negligent Misrepresentation.  It further found that Correct Rx was entitled to the following damages:

| | |
|---|---|
| Deposits paid to CASI | $2,936,257.80 |
| Extra rent and office expense for Barkwood Court lease extensions | 36,975.00 |
| Interest Paid on Equipment Loan | $84,442.19 |

| Out of pocket expenses | $73,390.00 |

*See* ECF No. 143, p. 14.

The total amount of damages is **$3,131,064.99**.  Evidence was admitted during trial in the form of testimony and exhibits concerning the underlying payments supporting the above-referenced consequential out-of-pocket and reliance damages. *See* Correct Rx's Motion for Entry of Judgment at ECF No. 146.

Now Defendants CASI, Cornerstone Automation Systems, Inc. n/k/a MTWD Holdings, Inc. ("MTWD"), Thomas Karol ("Karol"), Michael Doke ("Doke"), and Mark Gillett ("Gillett") urge this Court to ignore the jury's deliberations, disregard its Answers to Questions Nos. 2 and 4, and instead enter judgment in favor of CASI.  The Defendants' argument rests on two incorrect premises: 1) that the economic loss rule bars Correct Rx's negligent misrepresentation claim, and 2) the evidence at trial was legally insufficient to support a verdict against CASI because the jury did not return a verdict against Karol, Doke, and Gillett.

The Defendants misapprehend the scope of the economic loss rule as well as the nature of the out-of-pocket reliance damages awarded here. The jury's Answers to Questions 2 and 4 are consistent with Texas law and the damages awarded to Correct Rx are not precluded by the economic loss rule. Further, there was ample evidence introduced at trial to support the jury's verdict against CASI even though the individual Defendants were not found personally liable. As Defendants cannot satisfy the high threshold for overriding the jury's findings, their MotionJNOV should be denied and judgment entered in favor of Correct Rx against CASI.

## II.   LEGAL STANDARD

Defendants do not identify a rule of procedure under which they are moving nor do they include a separate discussion of the legal standard of review for their motion for judgment.

Instead, Defendants cite Texas state court decisions discussing the criteria for consideration of a motion for judgment notwithstanding the verdict under state law.  The Federal Rules of Civil Procedure are controlling in this matter.  Under Federal Rule of Civil Procedure 50, the bar for granting judgment as a matter of law is high. Judgment as a matter of law[1] is only appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (*citing* Fed. R. Civ. P. 50(a)); *Hunter v. Knoll Rig & Equip. Mfg.*, 70 F.3d 803, 808 (5th Cir. 1995). When considering a Rule 50 motion, "'the court must review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence.'" *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (*quoting Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 337 (5th Cir. 2001)); Fed. R. Civ. P. 50. The court is to consider all the evidence presented at trial in the light most favorable to the nonmoving party. In evaluating a motion for judgment as a matter of law, "[the court] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Russell*, 235 F.3d at 222 (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).  Reversal of the jury's verdict is only appropriate if, upon reviewing all the evidence presented to the jury in the light most favorable to the verdict, [the court] determine[s] that the verdict rests only on "mere speculation and conjecture." *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).

Stated another way, judgment as a matter of law should only be granted when, under controlling law, there can be ***only one reasonable conclusion*** as to the verdict on a particular

---

[1] "A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)

claim or defense. *See Seven-Up v. Coca-Cola*, 86 F.3d 1379, 1387 (5th Cir. 1996). In evaluating whether the Defendants have cleared this high bar, this Court must view all evidence in the light most favorable to Correct Rx, and indulge all reasonable inferences in its favor. *See Russell at* 222. As set forth below, Defendants have failed to carry their heavy burden and the jury verdict should not be disturbed.

## III.    ARGUMENT

### A.    The Economic Loss Rule Does Not Preclude Correct Rx's Claim For Reliance Damages.

Defendants' argument that "the economic loss rule, does not permit Plaintiff to recover on its negligent misrepresentation claim against CASI," (ECF No, 147, p. 9) overstates and oversimplifies the rule. The economic loss rule is not generally applicable in every situation; it allows recovery of economic damages in tort, or not, according to its underlying principles. *LAN/STV v. Martin K. Eby Constr. Co., Inc.*, 435 S.W. 3d 234, 236 (2014).

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendants did not exercise reasonable care or competence in obtaining of communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 762 N.D. Tex. 2012); *see also, Stanley v. Graff, Independnat Exceutor of the Estate of Alvin V. Graff, Deceased v. 2920 Park Grove Venture, LTD, et al.,* 2018 WL 2949158, at *7 (Tex. App. June 13, 2018); *citing* to *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The Court's Instructions for Question No. 2 properly set forth these elements.

Defendants argue that under the economic loss rule, a duty in tort does not lie when the injury claimed is for economic damages recoverable in contract.   MotionJNOV at 5.   Texas courts recognize, however, that (1) the economic loss rule does not bar claims for negligent misrepresentation in all instances where there is a contractual relationship between the parties; (2) it will not apply where there is a breach of a duty imposed by law independent of the obligations created in a contract; and (3) it does not preclude recovery of out-of-pocket reliance damages in such instances; only benefit of the bargain damages are barred.   The *Hurd* case illustrates this.

In *Hurd*, a mortgage borrower brought an action against her loan servicer, asserting breach of contract, negligent misrepresentation, fraud, violation of the Texas Deceptive Trade Practices Act, and other tort claims. The loan servicer, which was in contractual privity with Hurd, moved to dismiss arguing, among other things, that the claim was precluded by the economic loss doctrine. *Hurd*, 880 F.Supp. 2d at 762. In denying the motion to dismiss, the court analyzed when the economic loss rule would preclude recovery for a claim for negligent misrepresentation where there is a contractual relationship between the parties. It explained, "a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Id.* at 763; *quoting Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.,* 2006 WL 2432309, at *5 (N.D.Tex. Aug. 18, 2006) (*citing Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 45–47 (Tex.1998)). With respect to the first consideration, the court observed that where there is no clear duty created under case law, the question of whether a legal duty exists is based upon the circumstances.  *Hurd*, 880 F.Supp.2d. at 763.   It went on to find that, while there is no special or fiduciary duty between a mortgage servicer and

a borrower under Texas law, "there is always a duty to correct one's own prior false or misleading statement." *Id.*; *citing Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.,* 2005 WL 1704793, at \*6 (N.D.Tex. July 19, 2005) (*citing Trustees of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir.1994)).

The *Hurd* court found that the borrower's allegations that the loan servicer had made false and misleading statements to her without exercising reasonable care and competence were sufficient, if proven, to give rise to a duty to correct those statements on the part of the defendant loan servicer. *Hurd, id.*, at 763-64. This was a duty independent of its contractual obligations. The court recognized that "it could be determined based on a fact-intensive inquiry at a later stage of the proceedings that the Defendant owed Plaintiff a duty to exercise reasonable care to avoid a risk of foreseeable injury to her." *Id. citing In re Thrush*, 433 B.R. 585 at 597-98 (N.D. Tex. 2010).

Here, that "fact-intensive inquiry" has taken place. During the course of a seven-day trial, there was ample evidence that statements were made by CASI to Correct Rx in proposals, presentations, meetings and written communications regarding CASI's experience and capabilities to deliver a completed, fully automated turnkey pharmacy system within a specified timeframe. There was also evidence that CASI's actual experience, as well as internal communications within CASI, demonstrated that those statements were not true. CASI never corrected those misrepresentations by disclosing to Correct Rx the questions and concerns raised by its project managers or the overdue status of its other automation projects. Indeed, there was evidence at trial that the misrepresentations continued throughout the relationship. CASI had a duty imposed by law, independent of its contractual obligations, to exercise reasonable care to avoid foreseeable injury to Correct Rx. By failing to correct its prior false and misleading

statements, CASI breached that duty. The jury found that it failed to exercise reasonable care in its representations to Correct Rx and, as a consequence of its reliance on those misrepresentations, Correct Rx incurred substantial out-of-pocket damages.

CASI also argues – mistakenly - that this Court should disregard the jury's answer to Question No. 4, in which it awarded specific damages to Correct Rx.  The jury's award was proper and should not be disturbed because in Texas, the economic loss rule does not preclude recovery for a negligent misrepresentation claim when the plaintiff presents sufficient evidence of its out-of-pocket damages.  *See* CCE*, Inc. v. PBS & J Const. Servs., Inc.*, 461 S.W.3d 542, 551 (Tex. App. 2011) (reliance damages as measured by out-of-pocket expenditures and consequential loss are recoverable in negligence misrepresentation claim; damages for benefit of the bargain are not.).   In Texas, a plaintiff may recover "out-of-pocket and consequential damages for negligent misrepresentation" when the parties have a contractual relationship. *See Century Prod. Co. v. COSCO, Inc.,* No. 3:00-CV-0800-BC, 2001 WL 1577607, at *3 (N.D. Tex. Dec. 6, 2001) (claim barred only because damages sought were solely benefit of the bargain damages).

Texas has adopted § 552B of the Restatement (Second) of Torts for which sets forth the damages recoverable for a negligent misrepresentation claim:

> (1)   The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including:
>
> > (a)   the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> >
> > (b)   pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2)     the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App. 2007); *quoting* Restatement (Second) of Torts § 552B (1977); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex.1991). Accordingly, if a plaintiff can establish an independent injury that is distinct from the benefit of the bargain of the contract, the economic loss rule does not bar recovery of out-of-pocket loss incurred as a result of its reliance on the misrepresentation. *Sterling*, 259 S.W.3d at 798; *citing D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662 at 664 (Tex. 1998).

In *Hurd*, *supra*, the court held that the borrower was "only prohibited from recovering damages constituting the benefit of her contract with the defendant and may recover damages suffered in reliance upon a negligent misrepresentation." *Hurd*, 880 F.Supp.2d at 764; *citing Sloane,* 825 S.W.2d at 442–43 (adopting and discussing Restatement (Second) of Torts § 552B); *see also Nazareth,* 2005 WL 1704793, at *8 (denying motion to dismiss where it was possible that Plaintiff could prove that alleged injuries were independent from the subject matter of the contract).

Section 552B of the Restatement (Second) of Torts clearly permits the recovery of reliance damages in a claim for negligent misrepresentation. "Reliance damages, similar to out-of-pocket recovery, reimburse one for expenditures made towards the execution of the contract in order to restore the status quo before the contract." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 149 (Tex. App. 2012); *citing Foley v. Parlier*, 68 S.W.3d 870, 884–85 (Tex. App. 2002); *see also Sterling*, 259 S.W.3d at 798 ("Reliance damages are measured as the *out-of-pocket* expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales."); *citing Mistletoe Express Serv. v. Locke,* 762 S.W.2d 637, 638–39

(Tex.App.-Texarkana 1988, no writ). In contrast, "benefit of the bargain is measured by the prevailing party's anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform." *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 889 (Tex. App. 2004); *citing Lafarge v. Wolff, Inc.,* 977 S.W.3d 181, 187 (Tex. App. 2004); (*citing* Restatement (Second) of Contracts § 347); *Coon v. Schoeneman,* 476 S.W.2d 439, 441 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

Defendants' argument erroneously characterizes the damages awarded by the jury as benefit of the bargain or "expectancy" damages.  While Correct Rx sought both out-of-pocket and benefit of the bargain damages, as would have been permissible under Correct Rx's fraud claims,[2] the jury, upon returning a verdict against CASI on negligent misrepresentation, excluded benefit of the bargain damages from the award. Specifically, the jury awarded damages for Correct Rx's out-of-pocket expenditures:

- Deposits paid to CASI
- Extra rent and office expense for Barkwood lease extensions
- Interest paid on Equipment Loan
- Out-of-pocket expenses[3]

There was abundant evidence at trial demonstrating that these expenditures were made in reliance on CASI's misrepresentations.  For example, Dr. Ellen Yankellow directed Don Bossle

---

[2] "Texas recognizes two measures of direct damages for common-law fraud and fraudulent inducement: out-of-pocket and benefit-of-the-bargain." *Win Shields Prods., Inc. v. Greer*, No. 05-16-00274-CV, 2017 WL 2774443, at *4 (Tex. App. June 27, 2017), *review denied* (Oct. 27, 2017); *citing Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49–50 (Tex. 1998).

[3] At trial, Correct Rx introduced testimony and Exhibit 158A, setting out a group of damages, including IT costs, travel, costs of special blister cards and medications sent to CASI for testing, architectural design for the CASI equipment custom programming (Ex. A, APP 001-002).  At the charging conference, the court suggested aggregating these expenditures under a category called "Out-of-pocket expenses," which was not a title included in Correct Rx's exhibit. That designation was included in the jury charge for convenience, but was not intended to include all of Correct Rx's out-of-pocket expenses incurred as a result of its reliance on CASI's misrepresentations.

to secure the Equipment Loan and she instructed him to wire payments for deposits to CASI after receiving assurances that CASI was capable of and would deliver the fully automated pharmacy system to Correct Rx in 30 weeks.  Ex. B, E. Yankellow Day 2, 4:1-5:5 (APP 005-006). There was testimony and exhibits introduced demonstrating that Correct Rx was required to pay interest on that Equipment Loan.  Also, Dr. Yankellow testified that she entered into lease extensions at Correct Rx's Barkwood Road facility in reliance on CASI's misrepresentations that it would deliver the pharmacy system within the extended deadline of March 6, 2015, as set forth in the First Amendment.  Ex. B, E. Yankellow Day 2, 7:6-18 (APP 007); Ex. C, Joint Trial Exhibit 38 (APP 008-016). Thus, the evidence is undisputed that the expenditures that were awarded by the jury were paid by Correct Rx and were out-of-pocket expenses incurred as a result of reliance on CASI's misrepresentations.

Notably, the jury did not award damages for Correct Rx's additional payroll costs, which reflected the anticipated employee-reduction savings, i.e., the benefit of the bargain, that Correct Rx would have realized if CASI had performed under the contract. As reflected in CASI's proposal, reductions in personnel, along with the attendant payroll savings, was the promised "return on investment" ("ROI") that CASI represented Correct Rx could anticipate from the installation of the automated pharmacy system. *See* Ex. D, Jt. Trial Exhibit 37 at 28 (APP 046). This ROI was the benefit for which Correct Rx bargained. While these ROI/benefit of the bargain damages may have been precluded under the economic loss rule, the out-of-pocket reliance damages awarded by the jury are not.

The cases cited by the Defendants do not support disturbing the jury's verdict.  Instead, Defendants' cases focus largely on transactions where a party is negligent in the *performance* of

a contract, not where it makes negligent misrepresentations before execution of and during a contract. As such, the cases are readily distinguishable from the facts of this case.

Defendants first cite to *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, an insurance coverage case that came to the Texas Supreme Court on certified questions from the Fifth Circuit asking whether an insurer under a commercial general liability policy had a duty to defend its insured, a homebuilder, against a homebuyer's claims of defective construction. 242 S.W.3d 1, 4 (Tex. 2007). In rendering its decision, the Texas Supreme Court declined to adopt the insurer's economic loss rule argument, noting that "[t]he economic-loss rule, however, is not a useful tool for determining insurance coverage." *Id.* at 12. Defendants selectively quote the following observation from this case: Instead "[t]he rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Id.* at 494-95. This comment is not the holding of the case or essential to the holding. There was no analysis of the scope of the rule in *Lamar Homes* or the nuances of its application in specific circumstances. This insurance coverage case is not instructive to the instant case.

Likewise, Defendants' reliance on *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 249–50 (Tex. 2014) is misplaced, as that case stands for the proposition that a stranger to a contract claiming only economic loss cannot recover for negligent misrepresentation against one of the contracting party. In *LAN/STV*, the Dallas Area Rapid Transit Authority ("DART") contracted with an architecture firm to create plans for a light rail system. *LAN/STV*, 435 S.W.3d at 236. DART independently contracted with a construction company to build the system, based on the architect's plans. When the plans proved to be defective, the construction company sued the architecture firm for negligence and negligent misrepresentation alleging that it incurred increased construction costs as a result of the faulty plans. *Id.* at 236–37.

Following a jury trial, the contractor was awarded damages on its negligence claim, which was affirmed by the Dallas Court of Appeals.  The Supreme Court reversed, holding that the economic loss rule precluded the contractor from recovering delay damages from the architect in tort. 435 S.W.3d at 234. In reaching its conclusion, the Supreme Court carefully analyzed the purpose and scope of the economic loss rule in actions for negligent misrepresentation and negligent performance of services. *Citing* the Restatement, it stated:

> Under either [tort] a defendant generally must act with the apparent purpose of providing a basis for the reliance.  It may be useful to say that a defendant held liable under either [tort] must "invite reliance" by the plaintiffs, so long as the expression is understood to refer to the defendant's apparent purpose and not to a temptation incidentally created by the defendant's words or acts.

*Id.* at 245. The court acknowledged that "whether and how to apply the economic loss rule 'does not lend itself to easy answers or broad pronouncements'."  *Id.*, *citing Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011).  "Rather . . . the application of the rule depends on an analysis of its rationales in a particular situation." *Id.*, 245-46.

The *LAN/STV* court went on to hold that the economic loss rule barred the contractor's claims against the architects, because it was a stranger to the architect firm's contract with DART and did not "choose the architect, or instruct it, or pay it." *Id.* at 247-50. Under those circumstances, the court found "the contractor's principal reliance must be on the presentation of the plans by the owner, with whom the contractor is to reach an agreement, not the architect, a contractual stranger."  *Id.* The court also declined to upset the bargained-for allocation of risk between the parties to a construction project by allowing a non-party's negligence claim against a contracting party.  *Id.* at 248.  Accordingly, the narrow holding from LAN/STV is that the economic loss rule can be used to prevent a third-party from suing for negligent performance of professional services where there is a bargained-for risk allocation. *Id.* at 249–50. In short,

- 12 -

*LAN/STV* is distinguishable on many grounds; most prominent is that the instant case does not involve a stranger to a contract seeking damages for negligent performance of a contract. Rather, the evidence in this case demonstrated that CASI directly "invited reliance" by Correct Rx who justifiably relied on its representations.

Defendants also cite *Sterling Chemicals, Inc. v. Texaco Inc.*, a case that actually supports the jury's verdict for Correct Rx. *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d at 795.  In *Sterling*, a contractor proposed to build and operate a facility adjacent to Sterling Chemicals' plant to produce and supply synthetic gas using Texaco's proprietary gasification technology. Two years after the chemical plant went online, the syngas cooler in one of the buildings failed, resulting in disruptions in the supply of syngas and the production of acetic acid as well as destroying a catalyst.  *Id.* at 795–96.  Sterling sued Texaco for negligent misrepresentation, among other claims, alleging that "the syngas cooler was approved by Texaco and was an integral part of Texaco's gasification technology."  *Id.*

Texaco moved for summary judgment, arguing that the claim for negligent misrepresentation sought damages for "business interruption" and was barred by the economic loss rule. *Id.* at 796.  It argued that Sterling had failed to meet its burden of establishing that it suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim."

*Citing* § 552B of the Restatement (Second) Torts, the *Sterling* court stated explained the distinction between benefit of the bargain which are barred by the economic loss rule, and out-of-pocket reliance damage which are not.

> Accordingly, if a negligent misrepresentation claim only seeks benefit of the bargain damages, instead of those damages permitted for negligent misrepresentation, (1) a plaintiff cannot establish an independent injury that is distinct from the economic losses recoverable under a breach of contract claim and (2) the economic loss rule bars any

- 13 -

recovery of these damages under the negligent misrepresentation claim.  *D.S.A. Inc.*, 973 S.W.2d at 664.

*Sterling Chemicals, Inc.* at 798 (2007).  Sterling's claims failed because it sought only "the same measure of damages available for a breach of contract: the benefit of the bargain."  *Id.* at 798. In stark contrast, benefit of the bargain damages were not awarded to Correct Rx; instead only out-of-pocket expenditures were awarded by the jury.

Likewise, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986), which was not a negligent misrepresentation case, is inapposite as it sought damages for negligence in the *performance* of a contract.  In *Jim Walter Homes*, homeowners sued a builder seeking damages arising out of the sale and construction of their house.  *Jim Walter Homes*, 711 S.W.2d at 617. Following trial, "the jury found that the builder "breached the warranty of good workmanship in the contract and that it was grossly negligent in the supervision of the construction of the house." *Id.* at 617.  However, "[t]he Reeds' injury was that the house they were promised and paid for was not the house they received," which the Texas Supreme Court found could "only be characterized as a breach of contract."  *Id.* at 618.  Moreover, the only damages were "the cost of repairing the home to the condition it was represented to be in at the time of sale."  *Id.*  This case has no bearing here, where CASI represented it had the experience and capability to deliver a turnkey automation system within a specified timeframe, when it was aware that it had never done so before and aware its project managers had opined the company could not meet this deadline and where CASI failed to deliver any system to Correct Rx.

Defendants also cite to *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991) but, again, this was not a negligent misrepresentation case; it was the negligent *performance* of a contract where the Plaintiff sought merely the benefit of that contract as damages.  *DeLanney* involved "an allegation that a telephone company negligently failed to perform its contract to

- 14 -

publish a Yellow Pages advertisement." *DeLanney*, 809 S.W.2d at 493.  Importantly, the court noted "DeLanney sought damages for breach of a duty created under the contract, rather than a duty imposed by law." *Id.* at 494.  In rejecting the claim, the court found "Bell's duty to publish DeLanney's advertisement arose solely from the contract. DeLanney's damages, lost profits, were only for the economic loss caused by Bell's failure to perform.  Although DeLanney pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with Bell." *Id.* at 495. As such, it was precluded by the economic loss rule.

In *Blue Star Operating Co. v. Tetra Techs., Inc.*, an oil and gas exploration company, contracted with Tetra to provide "fluid engineering" and related services for the drilling of a well.  119 S.W.3d 916, 919 (Tex. App. 2003).  Thereafter, "[d]isputes arose between the parties regarding payment for fluid lost in the course of the drilling operations." *Blue Star*, 119 S.W.3d at 919.  Blue Star sued Tetra for breach of contract, fraud, negligence, and violations of the Texas Deceptive Trade Practices Act.  Following a trial, the trial judge granted Tetra's motion for directed verdict on the claim for negligent misrepresentation, from which Blue Star appealed. The Dallas Court of Appeals affirmed, finding that Blue Star did "not cite to evidence regarding any injury it suffered or damages it sought as a result of Tetra's alleged failure to disclose that was independent from its breach of contract claim."  *Id.* at 922.  As with the other case Defendants' cite, *Blue Star*—a negligent performance of contract case—is distinguishable on its face from the instant matter.

In this matter, the jury found in response to Question No. 2 that CASI made a false representation in the course of its business that was offered for guidance to Correct Rx, and that in doing so, CASI did not exercise reasonable care or competence in communicating the information.  There was ample evidence for the jury to conclude that CASI breached a duty

imposed by law, including a duty to correct misrepresentations that it had made to Correct Rx. While it is correct that, in addition to out-of-pocket expenditures, Correct Rx sought benefit of the bargain damages, i.e., costs related to employee payroll that could have been eliminated if the automation system had been delivered, the jury excluded the latter damages when it did not return a verdict for fraud.  Instead, the jury *worked through*[4] the damages sought by Correct Rx to arrive at a verdict that attempted to return to Correct Rx its out-of-pocket expenditures that it would not have incurred had CASI not made the negligent misrepresentations at issue—as is permitted under Restatement § 552B and Texas law.

The jury reached its verdict after reviewing evidence that was introduced over a week of trial and several days of careful deliberation.  The verdict conforms to the law—and the Court's jury charge—and should not be disturbed.  Defendants MotionJNOV should be denied.

### B.     The Jury was not Required to Find the Individual Defendants Liable in Order to Hold CASI Liable.

Defendants argue that the jury's verdict should be set aside, because "[o]ther than evidence surrounding alleged misrepresentations on the part of Defendants Karol, Doke and Gillett, Plaintiff did not introduce any other evidence in support of its negligent misrepresentation claim against Defendant CASI.  ECF No. 147, p. 14 of 16.  Defendants cite no legal authority or trial transcript to support this position and devote just a scant one and half pages to this argument.

---

[4] It is noteworthy that, for example, the jury did not award Correct Rx the full amount it sought for the Barkwood Court lease extension.  Instead, it awarded an amount equal to the first quarter of 2015 for the buildings that housed the pharmacy operation.  This evidences considerable effort on the part of the jury to delineate the specific out-of-pocket damages that it believed resulted from CASI's misrepresentation.

This argument fails for a number of reasons.  *First*, CASI was not sued solely based on a theory of respondeat superior,[5] it was sued for its own negligent misrepresentations.[6]  *Second*, evidence of misrepresentations was not limited to those of the individual Defendants.  *Third*, the jury may have found the individual Defendants did not have an individual pecuniary interest in the transaction and, therefore, could not be individually liable.  *Fourth*, the jury may have found that the individual misrepresentations did not rise to the level of satisfying Correct Rx's burden of proof as to the individuals, but that the totality of the misrepresentations made in the course of their employment, along with other CASI oral and written misrepresentations, did satisfy the burden of proof as to CASI.

### 1.    CASI was sued for its own direct negligence.

Contrary to the assertion by CASI, Correct Rx's allegations of negligent misrepresentations were not limited to just the statements made by Karol, Doke and Gillett. Instead, CASI was sued in its own right for the totality of the corporate misrepresentations.  By way of example, in Paragraph 36 of the Second Amended Complaint, Correct Rx alleged that "CASI, Karol, Doke, and Gillett represented that CASI could deliver a fully-operational automated Delivery System in the spring of 2015."  Ex. E, 2nd Amended Complaint. ¶ 36 (APP 066).  "CASI, Doke, Karol and Gillett also clearly misrepresented CASI's ability to perform

---

[5] The claim against CASI was not based on respondeat superior.  Even if it were, the verdict should not be disturbed, because while "such a verdict has the appearance of being based on inconsistent and contradictory findings of the jury, this is not of itself enough to require the reversal of a judgment against the passive defendant; the reason being that the finding in favor of the defendant whose act constitutes the negligence complained of, and the finding against the other in the same case by the same jury, can be attributed to improper conduct of the jury in arbitrarily exonerating the former and not necessarily to a finding that there was no negligence on his part." *Texas & P. Ry. Co. v. Huber*, 95 S.W. 568, 570-71 (Tex. Civ. App. 1906)

[6] Defendants did not request a jury instruction that would have required the jury to first make a finding against the individual Defendants, before making a determination as to CASI's lability.  If Defendants believed that the jury's answers to the jury interrogatories were inconsistent with the verdict against CASI, it was incumbent upon the Defendants to raise that objection when the jury announced its verdict; otherwise, such objections are waived. *Giddy Up, LLC v. Prism Graphics, Inc.*, 2008 WL 656504 (N.D.Tex. 2008); *citing*, *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974).

under the Amendment." *Id*., 2nd Amended Complaint. ¶ 40 (APP 067). "CASI, Doke and Karol, continued to misrepresent CASI's ability to timely perform by providing Correct Rx with performance milestones that, in fact, were never met…" *Id.,* 2nd Amended Complaint. ¶ 41 (APP 067). Thus, a finding of liability against Karol, Doke and Gillett was not necessary to find CASI liable.

### 2.      There was evidence introduced at trial of misrepresentations other than those of the individual Defendants.

At trial, evidence was introduced concerning the representations of Karol, Doke, and Gillett—Defendants concede this in the MotionJNOV. There was also evidence of corporate representations made by CASI including, by way of example and not limitation, the Proposals Rev. A, B, C, and D; the power point presentation made to Correct Rx; videos made available by CASI on the internet; CASI's web site representations; and information provided by other CASI employees, including Laurie Tolifson, Steve Remis, Carlos Jiminez, Kory Ballew, and Joe Mungo, among others.

There was additional evidence of CASI's negligent misrepresentations. Martin Yankellow testified that during precontract negotiations he visited California where a CASI automation system was in operation, during which visit he was able to interact with two CASI employees housed at the California facility. Exhibit F, Transcript-M. Yankellow, Part 1,  p. 56:14-22 (APP 076). Mr. Karol testified to the extensive year-long pre-contract negotiations between CASI and Correct Rx and various revisions to the written proposals submitted to Correct Rx. *See*, *e.g.*, Exhibit G, Transcript-Karol, Part 2, p.101:8-15 (APP 079). Mr. Karol testified that, at a critical point in the pre-contract negotiations, he sought input from Messrs. Ballew and Jiminez. Exhibit H, Transcript-Karol, Part 1, p.32:21-33:1 (APP 082-083). Mr. Ballew testified as to his involvement and input on the proposal prior to the execution of the

contract. *See*, *e.g.*,  Exhibit I, Transcript-Ballew, p. 84:25-85:3 (APP 086-087). As the Court will recall, Mr. Doke testified that Mr. Ballew ultimately acquiesced in the representation that CASI would deliver the pharmacy system with Correct Rx's deadline.

This is just a sampling of the evidence introduced in the over a week-long trial. CASI then represented that it could meet Correct Rx's critical time requirements.  While Correct Rx believes there was ample evidence to support a verdict against the individual Defendants, the jury did not agree.  However, the jury did find that the weight of the evidence was sufficient to meet the burden of proof as to CASI.  The jury's finding against CASI on the negligent misrepresentation claim and its findings that the individual Defendants were not liable, is easily reconciled with the trial evidence. Defendants' argument that no evidence supports the verdict against CASI is simply inaccurate and attempts to read the mind of the jurors to determine why the verdict did not include the individual Defendants.  This should be rejected as an improper attempt to second guess the jury's verdict.

> **3.     The jury may have concluded that the individual Defendants did not have a personal pecuniary interest in the transaction and, thus, could not be personally liable.**

As set forth above in Section III.A., *supra*, the elements of negligent misrepresentation are not limited to just the incorrect statements.  As a threshold matter, a defendant must be found to have a "pecuniary interest" in the transaction.  The jury may have determined that there was not sufficient evidence that the individual Defendants had a personal pecuniary interest in the transaction and, therefore, could not be held personally liable. CASI, on the other hand, had a direct pecuniary interest in the transaction and would be liable for the misrepresentations of the individual Defendants and the other misrepresentations described above.

**4.  The jury may have determined there was insufficient evidence to hold the individual Defendants liable, but the totality of the evidence was sufficient to hold CASI liable.**

The jury may have found that evidence of the information supplied by the individuals standing alone was insufficient to hold any one of them individually liable, but the totality of the statements made by all individual Defendants—along with other CASI employees and documents—did rise to the level of falsity for which CASI is liable.  As to "reasonable care or competency" the jury may have determined that such a duty of care was not sufficiently satisfied as to the individuals' statements, but was as to CASI (which held itself out as a leader in the field of pharmacy automation) when all of its employees' conduct and all of the representations were considered.  Further, the jury may have found that Correct Rx did not rely on any one statement of the individual Defendants, but did justifiably rely on the totality of the statements made orally and in writing by CASI.

It is pure speculation on the part of the Defendants to assume that the jury did not have sufficient evidence to support a claim against CASI, merely because a verdict was not handed down against the individuals. Such speculation cannot support disturbing the jury's verdict. Instead, "the court must review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *Poliner*, *supra*. If there is any theory of the evidence which reasonably supports the verdict, it should not be disturbed.  *Alaniz v. San Isidro Indep. Sch. Dist.*, 589 F. Supp. 17, 19 (S.D. Tex. 1983), *aff'd*, 742 F.2d 207 (5th Cir. 1984); *quoting Stokes v. Delcambre,* 710 F.2d 1120 at p. 1124 (5th Cir.1983) (*quoting Thompson v. Bass,* 616 F.2d 1259, 1267 (5th Cir.1980), *cert. denied* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980)). Under this analysis, only one conclusion can be reached—the jury's verdict was the product of due deliberation and

proper application of the Court's instructions and the Defendants' MotionJNOV should be denied.

### C.      Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Entry of Judgment.

Defendants' Response to Correct Rx's Motion for Entry of Judgment is based on Defendants' MotionJNOV and invites this Court to reject Plaintiff's request for entry of judgment on the jury's verdict.  Importantly, Defendants do not take issue with the way Correct Rx calculates pre-judgment interest.  Because the MotionJNOV fails and Defendants do not object to the method for calculating pre-judgment interest, Correct Rx requests that this Court grant its Motion for Entry of Judgment, entering judgment against CASI and in favor of Correct Rx along with pre-judgment interest.

### D.      Defendants' Request for an Award of Costs is Premature.

Karol, Doke and Gillett request judgment entered in their favor and also a ruling that they are entitled to move for an award of their taxable costs.  The jury returned a verdict in favor of Karol, Doke, and Gillett on all counts and, accordingly, entering final judgment on those claims would be appropriate.  However, the Defendants' request for a determination that taxable costs should be awarded to Karol, Doke or Gillett is premature.  These individual Defendants should follow the procedures under Federal Rule of Civil Procedure 54 and Local Rule 54.1 for submission of a Bill of Costs *after* entry of judgment.

Judgement in favor of CASI as to the fraud count is unnecessary.  The jury returned a verdict in favor of Correct Rx and against CASI as to negligent misrepresentation.  Judgment entered as to this count in favor of Correct Rx is all that is required for a final judgment as to CASI.

IV.     **CONCLUSION**

For the foregoing reasons, Correct Rx requests that the MotionJNOV be denied and the

judgment be entered in favor Correct Rx with pre-judgment interest.

Dated:  June 22, 2018                           Respectfully submitted,


                                    _____/s/ *Linda S. Woolf*_____
                                    Richard M. Barnes (*admitted pro hac vice*)
                                    rmb@gdldlaw.com
                                    Linda S. Woolf (*admitted pro hac vice*)
                                    lsw@gdldlaw.com
                                    **GOODELL, DEVRIES, LEECH & DANN, LLP**
                                    One South Street, 20th Floor
                                    Baltimore, MD 21202
                                    Telephone: (410) 783-4000
                                    Telecopier: (410) 783-4040

                                    Walter A. Herring
                                    Texas State Bar No. 09535300
                                    wherring@munckwilson.com
                                    **MUNCK WILSON MANDALA, LLP**
                                    12770 Coit Road, Suite 600
                                    Dallas, Texas 75251
                                    Telephone: (972) 628-3600
                                    Telecopier: (972) 628-3616
                                    *Counsel for Plaintiff Correct Rx Pharmacy*
                                    *Services, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 22nd day of June 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.


                                    _____/s/ *Linda S. Woolf*_____
                                    Linda S. Woolf

4825-9562-0201, v. 5